IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CLARISSA TRIMBLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO.: 4:22-cv-00433-GKF-JFJ |
| ) | |
| vs. ) | |
| ) | |
| FEDEX OFFICE AND PRINT SERVICES, ) | |
| INC. ) | ATTORNEY LIEN CLAIMED |
| ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

COMES NOW Plaintiff, Clarissa Trimble, by and through her attorneys of record, and hereby files her First Amended Complaint against Defendant FedEx Office and Print Services, Inc., previously misidentified as Fedex Company (hereinafter "FedEx" or "Defendant"), for the violations of her constitutionally protected rights arising out of her employment and separation therefrom by Defendant.

On March 14, 2023, the Court granted, in part, Defendant's Motion to Dismiss [Dkt. 5]. The Court's Order [Dkt. 12] gave Plaintiff until March 28, 2023 to file an Amended Complaint. Plaintiff now files said Amended Complaint and respectfully shows the Court the following:

**PARTIES**

1. Plaintiff Clarissa Trimble is a citizen of the State of Oklahoma and a resident of Tulsa County.

2. Defendant FedEx Office and Print Services, Inc. is a Texas coporation and regularly conducts business in Tulsa and Creek County, Oklahoma.

1

3. Defendant FedEx Office and Print Services, Inc. regularly employs more than fifteen (15) people.

**JURISDICTION AND VENUE**

4. Plaintiff incorporates as if re-alleged all preceding paragraphs.

5. This is an action for damages and to secure protection of and to redress deprivation of rights secured by Title VII of the Civil Rights act of 1964, as amended 42 U.S.C. §2000-2 (Title VII), and the Pregnancy Discrimination Act. 42 U.S.C. §§2000e-2(a)(1), 2000e(k) providing for relief against discrimination on the basis of race, sex, pregnancy, a hostile work environment, and retaliation.

6. This is an action for damages and to secure protection and to redress deprivation of rights secured by the Oklahoma Anti-Discrimination Act (OADA), 25 O.S. §1301, *et seq.*, providing relief against discrimination on the basis of race, sex, pregnancy, a hostile work environment, and retaliation.

7. Plaintiff, Clarissa Trimble, filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission (EEOC). Plaintiff complained to the EEOC of discrimination based on race, sex, pregnancy, a hostile work environment, and retaliation.

8. Plaintiff received a Notice of Right on or about late June 2021 and her Petition, filed in Creek County, OK District Court CV-2021-145, was filed within ninety (90) days of her receipt of the Notice of Right to Sue. As such, Plaintiff has complied fully with all administrative prerequisites in this Court under Title VII and the OADA.

9. Jurisdiction of the Court is proper under 28 U.S.C. § 1331.

10. Defendant removed this case to this venue from Creek County, OK District Court on October 5, 2022.

**FACTS COMMON TO ALL CLAIMS**

11. Plaintiff incorporates as if re-alleged all preceding paragraphs.

12. Plaintiff is an African-American female born in Grenada.

13. Plaintiff began her career at FedEx on January 7, 2014.

14. At all times relevant hereto, Plaintiff was a Store Manager II at a Tulsa, OK location. Plaintiff's store had the most female, African American staff-members in the Tulsa market.

15. Plaintiff faced sexist and racist bullying from her supervisor, District Manager David Randall, during her employment which, ultimately, resulted in Plaintiff's termination from FedEx on or about July 2, 2020.

16. In July of 2019 David Randall told Plaintiff that she was ready to be promoted because of her store's outstanding performance in FY19.

17. Plaintiff notified her David Randall of her pregnancy in August of 2019 in an effort to have a plan in place for leadership coverage when she eventually took maternity leave. Mr. Randall took this as his opportunity to force her out of FedEx for his own personal disdain, not because of legitimate business reasons.

18. David Randall made it his purpose to make Plaintiff's work environment extremely unpleasant, getting worse the further along she went in her pregnancy. He created such a hostile work environment Plaintiff was terrified to call in due to morning sickness and severe abdominal pain associated with her pregnancy. Plaintiff suffered great emotional and physical stress by refraining from tending to her health, such as using paid time off or sick leave, because Plaintiff was told by other FedEx employees that David Randall was out to get her fired.

19. During August of 2019, a Store Manager III position became available in Plaintiff's market. When Plaintiff expressed interest to David Randall completely changed his position as to Plaintiff's deserving a promotion. David Randall had several conversations about Plaintiff with other managers in the district telling them that Plaintiff "had too much going on" to be promoted.

20. Clyde Thomas was a Store Manager III at a different tulsal location from Plaintiff. Clyde planned to transition to the Arkansas market. In an effort to prepare his store for the transition, Clyde invited Geoff Meadors to shadow him, with the understanding the Geoff Meadors would act as an interim Store Manager until a replacement was found through ordinary application process. During the course of a conversation, Geoff Meadors informed Clyde there was no plan made to have him serve as interim and he had applied for the store already, even though no posted notices had been sent out concerning the open posititon.

21. In response to his experience with Meadors, Clyde Thomas invited Plaintiff to shadow him in his store in an effort to prepare Plaintiff for the interview. Clyde Thomas then received a call from David Randall who was extremely upset that Clyde gave Plaintiff the same opportunity as Geoff Meador to get a better understanding of his store. Clyde explaind to David that he was trying to give everyone interested in applying for the location an even chance at understanding the needs of it and its staff.

22. During the week of August 26, 2019, Plaintiff thought she was receiving an interview for the possible promotion to Clyde' store. Instead, David Randall made multiple comments about Palitniff being the mother of a toddler and pregnant. He even went as far as saying that "Clyde, the previous Store Ill manager, lucked out because he was single and without children, and that meant that he could be at the store at whatever time necessary."

23. David Randall then proceeded to tell Plaintiff that in order to be promoted, her store needed to be in the top 2 quartiles all throughout the year, no exceptions. Such requirements were not placed on any male candidates. Indeed, Plaintiff's store outperformed the previous store of the white male that was promoted to Store Manager III of Clyde's location all throughout FY19, outperformed all of the other stores in her category in the Tulsa market, and spendt 10 months in the top 2 Quartile in FY19.

24. A mystery shopper of Defendant even cited hearing conversation about David Randall's plans to continue to promote males over Plaintiff. On August 21, 2019, the mystery shopper reported the following: ... "the manager in Blue talked about promotions the entire time I was in the store .... he then started talking about someone else being promoted, I didn't catch their name, but then mentioned David said I'm next...".

25. About a month later, Plaintiff received a call from a well-seasoned Assistant Manager of 8+ years, Alicia Tiller. She had recently had an interview with David Randall for a Walmart store in the market and she was told that there was no way he was going to promote her because she just had a baby. David Randall also told another candidate, Racheal Frazier, an LC and team member of over 20 years, that she was not qualified to take on a Walmart location because of her personal life and schedule. Once again, David Randall promoted a white male candidate, who had only been with the company for about 2 years.

26. When Plaintiff asked Alicia Tiller if she would come forward about the blatant discriminatory actions against her, she stated that she feared that nothing would be done and that she did not want to endanger her career because she feared future retaliation.

27. Another incident arose during Plaintiff's "Pace conversation" in November of 2019. David Randall asked Plaintiff how he can assist her as a manager. When Plaintiff requested

feedback on her performance so that she can advance her career, David Randall told Plaintiff she was not a good match for the job and that she would be better off and should consider working from home, especially since she was going to be a mother of two.

28. David Randall continually questioned Plaintiff as to whether or not she will be returning to work after maternity leave. Plaintiff made it clear to him, multiple times and over months that she had no intentions of ending her career with the FedEx.

29. On January 3, 2020 David Randall made a site visit eager to unveil the new Performance Counseling policy and procedures and seemed all too excited about that the policy made it easier for him to terminate someone's employment. David Randall then stated that if he had any problems with this visit, the next incident he comes across will go on paper. Plaintiff took this as a threat that she was now being targeted and that David Randall was on the lookout for any reason to terminate her employment. David was so aggressive and hostile in his communication to both Plaintiff and her LC that her entire team was taken back and very concerned for my job. Even the newest hire stated, "what does he have against you and this store?"

30. During the same visit, David kept commenting on how horrible Plaintiff's visit went with the Regional Manager, Lee Weber, in December. David stated that Lee was very concerned about Plaintiff's ability to do her job. However, Lee praised Plaintiff and her store for being number 19 in the company on KPI. Plaintiff never heard from anyone, even Lee, that her store performance was poor.

31. On January 9th, Jesse Rosenthal, an LC, approached Plaintiff stating, "what kind of grudge does David have against you because he was questioning me about your ability to do your job, is he trying to fire you?" Shortly after speaking with Jesse, around 10:30am, David Randall walked into Plaintiff's store to return a set of keys he had taken. What Plaintiff though was a quick

6

drop off turned into an impromptu inspection of her store, in which David pulled her aside and placed her on level 1 disciplinary action. David never scrutinized and disciplined male-managers in this manner.

32. Indeed, on January 3rd, David Randall had stated that he refused to write up a male manager who had outstanding late fees for over 90 days on his company card, and had a very unpleasant call from Corporate Office questioning his decision. David stated he had no intentions to write this manager up because "he made a mistake".

33. For months Plaintiff endured the stress of a hostile environment that was detrimental to her health and the health of her unborn child.

34. Plaintiff lodged a complaint to Managing Director, Lee Weber on January 10, 2020. On January 22, 2020, Plaintiff took administrative leave without an end date pending HR's investigation of her complaint. Defendant refused to provide any information about what the investigation entailed, its findings or any disciplinary or corrective actions. Upon information and belief, Defendant did nothing but simply tell Plaintiff an investigation had occurred.

35. In March of 2020, Plaintiff took FMLA leave associated with the miscarriage of her child.

36. On July 2, 2020, Plaintiff was terminated under the pretext of violating Defendant's charitable contribution policy. However, David Randall had previously approved the complained of transactions that totaled only $431.07 in banners and posters for a church.

37. Plaintiff was fired because of David Randall's discriminatory animus against her as an African-American female born outside the United States. David Randall discriminated against other African-American female employees of Defendant. Upon information and belief,

Defendant eventually fired David Randall because of multiple complaints from other African-American female employees after Plaintiff's retaliatory termination.

**FIRST CLAIM FOR RELIEF**
**DISCRIMINATION IN VIOLATION OF**
**TITLE VII AND THE PREGNANCY DISCRIMINATION ACT OF 1978,**
**42 U.S.C. §§ 2000e-2(a)(1), 2000e(k)**

38. Plaintiff incorporates as if re-alleged all preceding paragraphs.

39. By treating the Plaintiff differently than her male, United States born, white, and non-pregnant coworkers with respect to discipline, working conditions, job performance, promotion and Plaintiff's termination, the Defendant has violated Title VII of the Civil Rights Act of 1964 and the Pregnancy Discrimination Act of 1978.

WHEREFORE, Plaintiff prays for judgment against the Defendant for:

a. Back pay and lost benefits; front pay until normal retirement

b. Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;

c. Punitive damages for the intentional and knowing acts of discrimination committed by the Defendant's management and executives;

d. Her attorney fees and the costs and expenses of this action;

e. Such other relief as the Court deems just and equitable.

**SECOND CLAIM FOR RELIEF**
**RETALIATION DISCRIMINATION IN VIOLATION OF**
**TITLE VII AND THE PREGNANCY DISCRIMINATION ACT OF 1978,**
**42 U.S.C. §§ 2000e-2(a)(1), 2000e(k)**

40.     Plaintiff incorporates as if re-alleged all preceding paragraphs.

41. Plaintiff lodged a formal complaint against David Randall. Defendant took no action to rectify David Randall's behavior. Instead, Defendant crafted a pretextual excuse to terminate Plaintiff based upon charitable donations that were approved by her manager.

42. By terminating Plaintiff's employment because she engaged in protected opposition to discrimination, Defendant has violated Title VII of the Civil Rights Act of 1964 and the Pregnancy Discrimination Act of 1978.

WHEREFORE, Plaintiff prays for judgment against the Defendant for:

   a. Back pay and lost benefits; front pay until normal retirement
   b. Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;
   c. Punitive damages for the intentional and knowing acts of discrimination committed by the Defendant's management and executives;
   d. Her attorney fees and the costs and expenses of this action;
   e. Such other relief as the Court deems just and equitable.

## THIRD CLAIM FOR RELIEF
## DISCRIMINATION IN VIOLATION OF THE OADA

43. Plaintiff incorporates as if re-alleged all preceding paragraphs.

44. By treating the Plaintiff differently than her male, United States born, white, and non-pregnant coworkers with respect to discipline, working conditions, job performance, promotion and Plaintiff's termination, the Defendant has violated the Oklahoma Anti-Discrimination Act.

WHEREFORE, Plaintiff prays for judgment against the Defendant for:

   a. Back pay and lost benefits; front pay until normal retirement
   b. Compensatory damages for her mental anguish, pain and suffering and

other non-pecuniary losses;

c. Punitive damages for the intentional and knowing acts of discrimination committed by the Defendant's management and executives;

d. Her attorney fees and the costs and expenses of this action;

e. Such other relief as the Court deems just and equitable.

## FOURTH CLAIM FOR RELIEF
## RETALIATION IN VIOLATION OF THE OADA

45. Plaintiff incorporates as if re-alleged all preceding paragraphs.

46. By terminating Plaintiff's employment because she engaged in protected opposition to discrimination, Defendant has violated the Oklahoma Anti-Discrimination Act.

WHEREFORE, Plaintiff prays for judgment against the Defendant for:

a. Back pay and lost benefits; front pay until normal retirement

b. Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;

c. Punitive damages for the intentional and knowing acts of discrimination committed by the Defendant's management and executives;

d. Her attorney fees and the costs and expenses of this action;

e. Such other relief as the Court deems just and equitable.

Respectfully submitted,

_/s/ Mark A. Smith_
Mark A. Smith, OBA 31231
Caruso, Smith, & Dunn PLLC
2021 South Lewis Avenue, Suite 720
Tulsa, Oklahoma 74104
(918) 583-5900 (Office)
(918) 583-5902 (Facsimile)
mark.smith@smithlegalok.com

Daniel E. Smolen, OBA #19943  
SMOLEN & ROYTMAN, PLLC  
701 S. Cincinnati Avenue  
Tulsa, Oklahoma 74119  
Telephone: (918) 585-2667  
Facsimile: (918) 585-2669  
danielsmolen@ssrok.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of March 2023, I electronically transmitted the foregoing to the Clerk of Court using the ECF system for electronic filing. The Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Lori Winland  
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.  
The Heritage Building  
621 N. Robinson Ave., Ste. 400  
Oklahoma City, OK 73102  
Telephone: (405) 546-3755  
Facsimile: (405) 546-3775  
Lori.winland@ogletree.com  
*Attorneys for Defendant*  
*FedEx Office and Print Services, Inc.*

/s/ Mark A. Smith